**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| SABARA FISHER ROBERTS, individually and as Administrator of the ESTATE of ADRIAN ROBERTS, | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | Civil Action No. |
| v. | : | |
| | : | |
| DEPUTY P. A. HERNANDEZ, | : | JURY TRIAL DEMANDED |
| DEPUTY P. SANSOME, | : | |
| DEPUTY J. EVANS, | : | |
| DEPUTY D. DOODY, | : | |
| DEPUTY L. FERMIN, | : | |
| DEPUTY R. MURPHY, | : | |
| SGT. R. STALLINGS, | : | |
| CAPTAIN C. PARKER, | : | |
| And | : | |
| CUMBERLAND COUNTY, | : | |
| Defendants. | : | |

<u>PLAINTIFF'S COMPLAINT</u>

NOW COMES Sabara Fisher Roberts, as Administrator for the Estate of Adrian Roberts, complaining of Defendants P.A. Hernandez, P. Sansome, J. Evans, D. Doody, L. Fermin, R. Murphy, R. Stallings, C. Parker, Sheriff Wright, and Cumberland County, and for cause would show the Honorable Court as follows:

1. On or about, August 18, 2020, Cumberland County Sheriff's Department Officers forced entry into Adrian Roberts home and shot him dead while attempting to serve an involuntary commitment order.

---

Plaintiff's Original Complaint                                                                 1

2.  This is an action brought by the Plaintiff against Defendants P.A. Hernandez, P. Sansome, J. Evans, D.Doody, L. Fermin, R. Murphy, R. Stallings, C. Parker, Sheriff Wright, and Cumberland County for the deputies' use of excessive and deadly force under the color of state law resulting in the death of Adrian Roberts in violation of his rights under the Fourth Amendment of the United States Constitution secured pursuant to 42 U.S.C. § 1983.   Plaintiff also brings claims for a violation of Title II of the Americans with Disabilities Act.

## PARTIES

3.  Plaintiff, Sabara Fisher Roberts is the widow of Adrian Roberts and the duly appointed administrator of his estate.

4.  Defendants P.A. Hernandez, P. Sansome, J. Evans, D. Doody, L. Fermin, R. Murphy, R. Stallings, and C. Parker were at all relevant times Sheriff Deputies with the Cumberland County Sheriff's Office.  The Deputy Defendants are sued in their individual capacity.

5.  Defendant Cumberland County is a municipality organized under the laws of the State of North Carolina. Defendant Cumberland County is responsible for the funding, budget, policies, operation, and oversight of the Cumberland County Sheriff's Department.

## JURISDICTION AND VENUE

6.  Jurisdiction exists in this Honorable Court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought pursuant to 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act to redress a deprivation of the Fourth Amendment rights of the decedent Adrian Roberts, as well as the failure to provide Mr. Roberts with reasonable

accommodations. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to adjudicate pendent state law claims.

7. Venue is proper in this Honorable Court as Defendants' constitutional violations, statutory violations, intentional torts and otherwise violative conduct occurred within the Eastern District of North Carolina.

## FACTUAL BACKGROUND

8. Adrian Roberts enlisted in the US Army in June of 2001 and was deployed to the Middle East as part of Operation Iraqi Freedom.

9. While in Iraq, Mr. Roberts suffered a head injury between 2003-2004.

10. Mr. Roberts was honorably discharged on June 3, 2005.

11. In February of 2012, Mr. Roberts began to seek treatment for struggles with his mental health, including in-patient stays related to feelings of paranoia.

12. Mr. Roberts treated throughout 2012, and during a second in-patient hospital stay in November of 2012 he was diagnosed with Post Traumatic Stress Disorder and psychotic disorder by the Veteran's Administration.

13. Throughout 2013 and 2014, Mr. Roberts continued to regularly seek treatment for his mental health struggles with the Veterans Administration. During this period, he was regularly taking medication, yet he continued to experience paranoia, nightmares, flashbacks, auditory hallucinations and depression.

14. In October of 2014, Mr. Roberts was diagnosed with schizoaffective disorder, auditory hallucinations, PTSD, and depression.

15. During 2015, Mr. Roberts continued to struggle with his mental health and was involuntarily admitted to Cherry Hospital in July of 2015.

16. In 2016, Adrian continued regularly treating for his mental health issues and continued with medication.

17. In August of 2016, Doctors reaffirmed his diagnosis of chronic PTSD.

18. Mr. Roberts was deemed to 100% service-related disabled by the Veteran's Administration.

19. He was also deemed disabled by the State of North Carolina.

20. In June of 2018, Adrian was emergency petitioned and sent to the emergency room by police during a period of mental instability.

21. Doctors at Sinai Hospital of Baltimore diagnosed him with schizophrenia and bipolar disorder, among other diagnoses.

22. He was treated with in-patient care for a one-week period before being discharged home.

23. Mr. Roberts continued to regularly treat with the VA through 2019 and the first half of 2020.

24. On June 24, 2020, Adrian had a virtual visit with the VA for a mental health follow up and medication management. During this visit, he reported that COVID-19 and riots following the death of George Floyd were causing hypervigilance, paranoia, and flashbacks.

25. After the visit, the VA provider called the Cumberland County Sheriff's Department and informed the Department of Mr. Roberts mental health struggles.

26. The provider requested the Department do a mental health check as the provider could not see Adrian in person.

27. The Sheriff's Department went to Mr. Roberts' home but he would not come to the door. After speaking to Sabara Fisher Roberts, the Sheriff's deputies left.

28. On June 26, 2020, Sabara reached out to the VA mental health team reporting that she was concerned with Adrian's mental state.

29. VA providers explained that if Sabara felt Adrian was in danger, she could take him to the ER, police could be called to the home, or she could petition to have him committed.

30. On June 29, 2020, the VA staff met regarding Adrian's case and determined that they would attempt to contact Adrian.

31. When their attempt to contact Adrian failed, the VA again called the Cumberland County Sheriff's Office and requested a mental health wellness check be conducted.

32. On June 30th, the Sheriff's Department performed the wellness check, but deputies were again unable to get anyone to answer the door.

33. Over the next month and a half, Adrian's mental health status continued to deteriorate.

34. On August 12, 2020, Sabara called the VA reporting that Adrian was in mental health crisis and feared he could hurt someone.

35. On August 13th, at the request of the VA, the Cumberland County Sheriff's Department again performed a wellness check at Mr. Roberts' house.

36. A Sheriff Deputy made contact with Mr. Roberts on that date and Adrian stated he did not "call them, nothing is wrong with him and to get off his property."

37. While speaking with the VA on August 13th, Sabara indicated that she did not want the Sheriff's department to involuntarily commit Adrian for fear of what would happen.

38. On August 14th, the supervising physician at the VA again contacted the Sheriff's department for a wellness check. It is unclear whether one was actually performed.

39. On August 18th, Sabara again contacted the supervising physician at the VA who informed her that the mobile crisis unit would evaluate Mr. Roberts.

40. The VA mobile crisis unit came to Adrian's home but was unable to evaluate Mr. Roberts.

41. The members of the mobile crisis unit informed Sabara that the only remaining option was to secure an involuntary commitment order with the magistrate.

42. Sabara went to the magistrate, told him of the situation, and informed him there were no firearms or other individuals in Mr. Roberts' house.

43. The magistrate issued an involuntary commitment order and forwarded the order to the Cumberland County Sheriff's Department for execution.

44. The magistrate informed Ms. Roberts that she should be present when the deputies go to open the door because "they can't force their way in."

45. Upon receipt of the order, a Sheriff's deputy call Ms. Roberts to speak with her about Adrian. Ms. Roberts relayed the same information she had shared with the Magistrate, specifically that Adrian was a veteran suffering from PTSD and schizoaffective disorder, and that there were no weapons in the house.

46. She then drove to her family's other home to get keys to Adrian's house to provide to the deputies.

47. In the interim, the Cumberland County Sheriff's Department deployed its SWAT team to serve the involuntary commitment order.

48. Defendants P.A. Hernandez, P. Sansome, J. Evans, D. Doody, L. Fermin, R. Murphy, R. Stallings, and C. Parker equipped themselves with body armor and M4 assault rifles to serve an involuntary commitment order on a disabled, mentally unstable, unarmed veteran.

49. Upon arriving at Mr. Roberts' home, the deputies discovered Mr. Roberts was inside his home and would not open the door.

50. The responding deputies knew that neither Sabara Fisher Roberts, nor any of the children were at the home.

51. The deputies forced entry into the home by breaching the front door.

52. Upon entering the home, the deputies opened fired and killed Adrian Roberts.


## COUNT I: FOURTH AMENDMENT VIOLATION – UNLAWFUL ENTRY
### AGAINST HERNANDEZ, SANSOME, EVANS, DOODY, FERMIN, MURPHY, STALLINGS, and PARKER

53. The preceding paragraphs are incorporated by reference as though set forth fully herein.

54. The Deputy Defendants forced entry into the home of Adrian Roberts without legal justification to do so.

55. The Deputy Defendants engaged in a course of conduct that violated Roberts' Fourth Amendment rights which began with their unlawful entry onto the property and culminated with the fatal shooting of Mr. Roberts.

56. The Deputy Defendants embarked on a willful, malicious, reckless, and outrageous course of conduct that was intended to cause and, in fact, caused Roberts to suffer extreme and severe mental and emotional distress, anxiety, terror and agony, and ultimately death.

57. Plaintiff seeks survival damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all other survivorship and wrongful death damages available under the law.

**WHEREFORE,** Plaintiff demands judgement in her favor, and against the Deputy Defendants, pursuant to 42 U.S.C. 1983, in an amount in excess of $10 million, including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other damages legally appropriate at the time of jury trial.

### COUNT II: FOURTH AMENDMENT VIOLATION – EXCESSIVE FORCE
### AGAINST HERNANDEZ, SANSOME, EVANS, DOODY, FERMIN, MURPHY, STALLINGS, and PARKER

58. The preceding paragraphs are incorporated by reference as though set forth fully herein.

59. Plaintiff would show that the Deputy Defendants failed to act as an objectively reasonable officer would have acted in the same or similar circumstances. That is, the Deputy Defendants, without justification and the need to do so, used excessive and deadly force as described above and killed Adrian Roberts without legal justification.

60. The excessive and deadly force used by the Deputy Defendants was not objectively reasonable, justified, nor was it necessary under the circumstances.

61. Plaintiff would show that the Deputy Defendants denied Roberts of his right to be free from the use of excessive force in violation of the 4th Amendment to the United States Constitution.

62. The Deputy Defendants embarked on a willful, malicious, reckless, and outrageous course of conduct that was intended to cause and, in fact, caused Roberts to suffer extreme and severe mental and emotional distress, anxiety, terror and agony.

63. Plaintiff seeks survival damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all other survivorship and wrongful death damages available under the law.

**WHEREFORE**, Plaintiff demands judgement in her favor, and against the Deputy Defendants, pursuant to 42 U.S.C. 1983, in an amount in excess of $10 million, including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other damages legally appropriate at the time of jury trial.

## COUNT III: VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT
### AGAINST CUMBERLAND COUNTY

64. The preceding paragraphs are incorporated by reference as though set forth fully herein.

65. Adrian Roberts was a qualified individual with a disability.

66. Defendant Cumberland County is a public entity subject to the antidiscrimination requirements of Title II of the Americans with Disabilities Act and a recipient of federal funding subject to the antidiscrimination requirements of Section 504 of the Rehabilitation Act.

67. The conduct, as described *supra*, demonstrated a failure to provide reasonable modifications to its policies and practices to accommodate Adrian Roberts' disability-related needs when attempting o serve the involuntary commitment order.

68. Defendants' conduct in failing to provide reasonable modifications to Adrian Roberts was deliberately indifferent in that Defendants had notice of the need to reasonably accommodate Mr. Roberts disability-related needs and failed to do so.

69. As a result of Defendants' failure to provide reasonable modifications to their policies and practices, Adrian Roberts suffered greater injuries than other individuals taken into custody, specifically he was killed.

70. Plaintiff seeks survival damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all other survivorship and wrongful death damages available under the law.

**WHEREFORE**, Plaintiff demands judgement in her favor, and against the Cumberland County, pursuant to Title II of the Americans with Disabilities Act, in an amount in excess of $10 million, including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, attorneys' fees, and any other damages legally appropriate at the time of jury trial.

### COUNT III: VIOLATION OF SECTION 504 OF THE REHABILITATION ACT
### AGAINST CUMBERLAND COUNTY

71. The preceding paragraphs are incorporated by reference as though set forth fully herein.

72. Adrian Roberts was a qualified individual with a disability.

73. Defendant Cumberland County is a public entity subject to the antidiscrimination requirements of Title II of the Americans with Disabilities Act and a recipient of federal

funding subject to the antidiscrimination requirements of Section 504 of the Rehabilitation Act.

74. The conduct, as described *supra*, demonstrated a failure to provide reasonable modifications to its policies and practices to accommodate Adrian Roberts' disability-related needs when attempting to serve the involuntary commitment order.

75. Defendants' conduct in failing to provide reasonable modifications to Adrian Roberts was deliberately indifferent in that Defendants had notice of the need to reasonably accommodate Mr. Roberts disability-related needs and failed to do so.

76. As a result of Defendants' failure to provide reasonable modifications to their policies and practices, Adrian Roberts suffered greater injuries than other individuals taken into custody, specifically he was killed.

77. Plaintiff seeks survival damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all other survivorship and wrongful death damages available under the law.

**WHEREFORE**, Plaintiff demands judgement in her favor, and against the Cumberland County, pursuant to Section 504 of the Rehabilitation Act, in an amount in excess of $10 million, including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, attorneys' fees, and any other damages legally appropriate at the time of jury trial.

Respectfully submitted,


/s/ John J. Coyle

MCELDREW YOUNG PURTELL MERRITT

Daniel N. Purtell, Esq.*                    S. Lee Merritt, Esq.*
John J. Coyle, Esq.*
123 South Broad Street                      1910 Pacific Ave
Suite 2250                                  Suite 8000
Philadelphia, PA 19109                      Dallas, TX 75201
215-545-8800                                215-545-8800
dan@mceldrewyoung.com                       lee@leemerrittesq.com
jcoyle@mceldrewyoung.com


*Pro Hac Vice Petition Forthcoming


THE ROGERS LAW FIRM

/s/ Allen Rogers
Allen Rogers, Esq.
111 Person Street
Fayetteville, North Carolina 28301
910-433-0833
allen.rogers@allenrogers-law.com
NC State Bar No. 15557
Local Civil Rule 83.1(d) Counsel for Plaintiff

Date: September 2, 2021

---

Plaintiff's Original Complaint                                          12